UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **CHADWICK WRIGHT** | \* | **CIVIL ACTION NO. 12-2057** |
| **VERSUS** | \* | **JUDGE JAMES T. TRIMBLE, JR.** |
| **WARDEN, LOUISIANA STATE PENITENTIARY** | \* | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

*Pro se* Petitioner Chadwick Wright filed his petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on July 30, 2012 and an amended petition on November 26, 2012. [docs. # 1, 13]. Respondent responded to the petition on April 25, 2013 and filed an amended memorandum in support of its response on April 30, 2013. [docs. # 22, 24]. Petitioner, an inmate in the custody of Louisiana's Department of Public Safety and Corrections incarcerated at the Louisiana State Penitentiary, Angola, Louisiana, attacks his conviction and sentence for second degree murder. This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

## BACKGROUND

The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeal as follows:

> Defendant, [and his accomplices] Christopher Hill and Monjeral Foster met at the Lincoln Motel where Foster was staying because they had planned to commit a home invasion and armed robbery at the residence of Freddezzio Ferguson. Two weeks earlier, Defendant bought drugs from Ferguson. They decided to target him because they expected him to have drugs and money and because they did not think he would be able to report them to police due to his own illegal activities. During the early

morning hours of January 22, 2003, the three men drove in a pickup truck to Ferguson's house in Bernice and walked around the house looking through windows to see if anyone was awake. Defendant was armed with a Colt .45 caliber semiautomatic pistol, Hill was armed with a 9-mm rifle and Foster was armed with a 12-gauge shotgun. After putting on masks and gloves, Defendant kicked in the front door and yelled, "police, get down, get down." Ferguson had fallen asleep in the living room while looking through catalogs when the three armed gunmen burst into his house. Adrianne Andrews, Ferguson's girlfriend, was asleep in their bedroom with their one-year-old child, and a three-year-old and six-year-old were also asleep in another bedroom. Hill came into the bedroom with a pistol and told Adrianne not to move while Defendant and Foster were kicking and punching Ferguson. Ferguson asked them, "What did I do, man, what did I do?" The gunmen kept saying that they wanted it all and asked for Ferguson's cell phone and gun; Ferguson told them he did not have a gun because he was on probation. Adrianne then realized that the gunmen were not actually police.

As Defendant and Foster brought Ferguson back to the bedroom at gunpoint, they knocked him to the ground and demanded drugs and money. Ferguson told Adrianne to give them all the money in the closet, which was approximately $ 1,500 that was kept in a jacket pocket, and Adrianne gave it to them; Ferguson told them he did not have any drugs. The older children were allowed to join Adrianne in the bed, and the gunmen were yelling at her to keep them quiet because they were crying. The gunmen continued beating Ferguson with their weapons, telling him it was not enough, while Ferguson was begging them not to hurt his family. Ferguson offered to take them to another location where they could get more money and drugs, and the gunmen agreed. Defendant and Foster then left with Ferguson in Ferguson's car while Hill stayed with Adrianne and the children to make sure she did not call the police. Defendant and Foster told Hill that, if they were not back in 20 minutes, he knew what to do. At this point, Hill and Foster switched guns so that Hill now had the 12-gauge shotgun and Foster had the 9-mm rifle; Hill sat on a stool with a shotgun across his lap while waiting for them to return.

Foster drove Ferguson's car while Ferguson and Defendant rode in the back seat; Defendant was armed with the Colt .45 caliber semiautomatic pistol, and Ferguson was giving Foster directions of where to go. While Foster was driving, Ferguson grabbed Defendant's gun and they wrestled over it. Foster testified that he pulled the car over and turned around to help Defendant, but that, when he swung around his 9-mm rifle, Ferguson grabbed the barrel of the rifle. Foster testified that, when he and Ferguson were wrestling over the 9-mm rifle, it went off and shot Defendant. At one point, Ferguson was struggling with both Foster and Defendant over both guns. Foster testified that he and Ferguson continued to struggle over the 9-mm rifle, and Ferguson was halfway out of the car at that time. Foster testified that, in the meantime, Defendant was trying to unjam his pistol and was beating Ferguson with the pistol. While Defendant was beating Ferguson with the pistol, the pistol discharged and wounded Foster. Foster testified that soon after getting shot, he lost

consciousness; Foster testified that Defendant woke him and told him to move over and then Defendant drove them back to Ferguson's house.

When Defendant and Foster returned in Ferguson's car, Defendant beat on the door, told Hill to "come on," and all three left in a truck. The three men first went to Rodney Young's house in Ruston, where they called an ambulance for Foster, who was taken to Lincoln General Hospital. Foster testified that, when he woke up in the hospital, he originally told police he had been wounded in a drive-by shooting and gave them a false name because he knew he was wanted for a parole violation. In the meantime, Hill left the truck at an apartment complex in Grambling and hid the guns in an abandoned trailer on his parents' property. Rodney Young, who had originally agreed to participate in the robbery but backed out because he was friends with Ferguson, took Defendant to a hospital in Shreveport.

After the gunmen left, Adrianne called her mother and went to Ferguson's car, where she saw his shoe and blood all over the car; Adrianne then called police. At approximately 5:00 a.m., Kathy Tucker, the owner of C.D.'s Restaurant in Bernice, noticed as she pulled into the driveway of the restaurant that a grease barrel had been overturned and then noticed a body lying behind it. After flagging down a neighbor and telling him what she saw, the neighbor went to look; the neighbor came back and told her to call 911 because it was Ferguson and that police had been looking for him. An autopsy later revealed that Ferguson died from a combination of multiple gunshot wounds to the chest and abdomen and blunt force trauma to the head that caused three skull fractures. Dr. James Traylor, a forensic pathologist, testified that Ferguson sustained 11 wounds to his head and that, with the exception of the graze wound to his arm, the gunshot wounds were sustained outside the car.

Bernice Police Officer Eric Henderson secured the scene, and officers from the Union Parish Sheriff's Office collected evidence and photographed the crime scene, which contained four spent .45 caliber shell casings, projectiles, blood and skid marks. When Ferguson's body was removed from the scene, a malfunctioned .45 caliber round was found underneath his body. Two spent 9-mm cartridge cases were recovered from inside Ferguson's vehicle. The weapons used by Defendant, Hill, and Foster were recovered at 436 Garr Road in Grambling, with two of them being found inside the house and one being found behind the house. An expert in firearms identification from the North Louisiana Crime Laboratory determined that the bullet recovered from Ferguson's body was fired by the Colt .45 caliber semiautomatic pistol, which was admitted as State's Exhibit 14; that the .45 caliber bullet recovered from Ferguson's car had also been fired by the Colt .45 caliber semiautomatic pistol; and that the two spent 9-mm cartridges recovered from Ferguson's car were fired by the 9-mm rifle, which was admitted as State's Exhibit 16.

Detective Trey Fulton testified that evidence at the crime scene indicated that more than one person had been shot. Detective Fulton testified that Erica Mayfield went to see Foster at the hospital, and she gave them information that led to the discovery

of Foster's real name and Hill's involvement with Foster. The investigation ultimately developed Defendant as a suspect, and Detective Fulton learned that Defendant had sustained a gunshot wound and that Defendant had turned himself in to Shreveport Police. Defendant gave a statement to Detective Fulton, and this statement was played for the jury. In this statement, Defendant said it was a "big accident." Defendant admitted to the robbery and home invasion being planned, that he was armed with a .45 automatic, that everybody got shot when they were all fighting over the guns, that Ferguson fell out of the car and that they drove away. Defendant stated that he did not intend to kill Ferguson, but that Ferguson would not "stop the struggle." Defendant stated that the robbery was his idea, his plan and that he was the main shooter, but that the shooting was an accident.

Defendant admitted at trial that he had three prior felony convictions and that he had participated in the home invasion at Ferguson's residence. Defendant testified that he did not plan to shoot Ferguson or to take him away from his house and that the only reason they took him was because Ferguson offered to take them to another place for drugs. Defendant further testified that he fell asleep in the back seat and that Ferguson went after his gun at that time, which led to them wrestling over the gun. According to Defendant, Ferguson got the gun and tried to fire it, but it did not fire because it was not cocked. Defendant testified that he then threw up his hands, but that Ferguson cocked the gun. Defendant maintained that it was not necessary for Ferguson to shoot him, that he could have just talked to him, but that he started fighting back at that point. He explained that, when Foster turned around to help him fight off Ferguson, Foster accidently pointed the gun at Defendant's chest; Defendant also testified that it was he, not Ferguson, who was wrestling with Foster over the 9-mm rifle when it shot Defendant. Defendant ultimately related that he did not know how Ferguson got shot, but that he thought the pistol discharged when they were struggling over it and that he "lost control" after getting shot and that it was possible for Foster to have shot Ferguson. Defendant claimed that he did not tell investigators about Ferguson taking the gun from him and trying to shoot him because they did not ask him that question; Defendant testified that he told investigators that the shooting was an accident..

*State v. Wright*, 978 So. 2d 1062, 1066-68 (La.App. 2 Cir. 2008).

Petitioner was found guilty of one count of second degree murder, and, on November 29, 2006, was sentenced to serve a life sentence at hard labor without the benefit of parole, probation, or suspension of sentence. (R. 10, 11, 1061).[1] On appeal to the Second Circuit Court

---

[1] After sentencing, Petitioner filed a motion for a new trial and motion for post-verdict judgment of acquittal, which were both denied by the trial court on November 8, 2007. (R. 1082). Petitioner's sentence was vacated by the state trial court due to the lack of ruling on the

4

of Appeal, the state appellate court affirmed Petitioner's conviction and the sentence imposed for second degree murder. *Wright*, 978 So. 2d at 1062; *see also* (R. 1095-1120). Shortly thereafter, Petitioner filed a writ application in the Louisiana Supreme Court, which was denied on October 31, 2008. *See State v. Wright*, 994 So. 2d 532 (La. 2008).

On August 25, 2009, Petitioner filed a *pro se* application for Post-Conviction Relief ("PCR") in which he asserted two claims for relief. (R. 1131-40). Specifically, Petitioner alleged that he was denied his (1) Fifth and Fourteenth Amendment rights when the prosecutor introduced fabricated ballistics evidence to obtain a conviction and (2) Sixth Amendment right when defense counsel failed to conduct a minimum investigation before selecting a plausible line of defense. (R. 1134, 1137). On January 11, 2010, the state trial court denied claim one (fabricated evidence) as procedurally defaulted under La. C.Cr.P. art. 930.4(B), (F), finding that "Petitioner alleges a claim under which Petitioner had knowledge and inexcusably failed to raise in the proceeding leading to conviction, i.e., the trial," and denied claim 2 (ineffective assistance of counsel) on its merits. (R. 1153-55). The trial court's decision was affirmed by both the Second Circuit Court of Appeal on March 11, 2010 and the Louisiana Supreme Court on April 25, 2011. (R. 1170); *State of Louisiana ex rel. Chadwick Wright v. State of Louisiana*, 62 So. 3d 72 (La. 2011); *see also* [doc. # 13-2, P. 15].

While Petitioner's writ application was pending at the Louisiana Supreme Court, he filed a second PCR application, combining his prior PCR arguments into a single claim for relief – ineffective assistance of trial counsel based on his claim that counsel aided the prosecution in allowing fabricated ballistics evidence to be admitted as evidence in the trial. [doc. # 13-4, P. 40-56]. On December 6, 2010, the state trial court denied Petitioner's second PCR application

---

post-trial motions. *Id.* Petitioner was then re-sentenced to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. *Id.*

under La. C.Cr.P. art. 930.4(D) as repetitive and successive. (R. 1178-79). The court noted that ". . . most of Petitioner's Application concerns Petitioner's reasons for concluding that the bullet present was not the same bullet that was not found, which was the same factual basis provided for the claims in his first Application for Post Conviction Relief." (R. 1178). The state trial court's decision was affirmed by the Second Circuit Court of Appeal on August 11, 2011 and the Louisiana Supreme Court on May 4, 2012. (R. 1180); *State ex rel Chadwick Wright v. State*, 88 So.3d 459 (La. 2012); *see also* [doc. # 13-4, P. 21].

Petitioner filed the instant petition on July 30, 2012, raising three claims. Petitioner's first and second *habeas* claims were originally raised in his first PCR application, while the third *habeas* claim was raised in his second application. *See* [doc. # 1]. Specifically, Petitioner argues the following:

1. "The State's prosecutor introduced fabricated and altered evidence . . . to secure [Petitioner's] conviction . . .[;]"

2. Ineffective assistance of trial counsel for failure to investigate the circumstances surrounding Petitioner's trial; and,

3. "Trial counsel also assisted the prosecutor in preventing [Petitioner] from discovering and revealing to the jury the inclusion of the inadmissible/fabricated evidence."

[doc. # 1, P. 7, 8, 12].

The matter is now before the undersigned.

**LAW AND ANALYSIS**

**I.      Standard of Review – 28 U.S.C. § 2254**[2]

---

[2] Respondent's first argument is that Petitioner's *habeas* petition "***was not*** filed within the deadlines of 28 U.S.C. 2244(d)." [doc. # 24, P. 11] (emphasis in original). Respondent argues that because Petitioner's second PCR application was denied by the state courts on procedural default grounds, "it cannot be considered to have extended the time limits for . . . Petitioner to seek habeas review." *Id.* at 12. However, contrary to Respondent's argument, Petitioner's state PCR application was properly filed, so as to toll Antiterrorism and Effective Death Penalty Act's

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief. The AEDPA limits how a federal court may consider *habeas* claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, ⎯⎯ U.S. ⎯⎯, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Dowthitt*, 230 F.3d at 740. Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741. Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be

---

(AEDPA's) one-year statute of limitations for filing a federal *habeas* petition. The Fifth Circuit has held that even though issues raised by a prisoner were ultimately determined to be successive and, thus, procedurally defaulted under Louisiana state law; the PCR application properly tolled the AEDPA one-year statute of limitation. *Hall v. Cain*, 216 F.3d 518 (5th Cir. 2000); *see also* 28 U.S.C.A. §§ 2244(d)(2), 2254; LSA-C.Cr.P. art. 930.4.

correct; however, the petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e).

## II. Petitioner's Claims

### A. Procedurally Defaulted Claims: One and Three

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338.

This type of procedural default will bar federal court review of a federal claim raised in a *habeas* petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902. When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991). In this case, the trial court, in its January 11, 2010 ruling, dismissed Petitioner's first *habeas* claim because of Petitioner's failure to raise those claims in an earlier proceeding and/or on appeal. (R. 1153-56). The court relied on

8

La.Code Crim.P. art. 930.4[3] and held:

> Petitioner's first claim is denied under La. C.Cr.P. art. 930.4(B), in that Petitioner alleges a claim under which Petitioner had knowledge and inexcusably failed to raise in the proceeding leading to conviction, i.e., the trial. Petitioner did in fact properly fill out an application for post conviction relief, using the form approved by the Louisiana Supreme Court. Under Part C of Claim One, this form requires Petitioner to state reasons why he failed to raise this claim in the trial court prior to conviction, which Petitioner completed, thus satisfying La. C.Cr.P. art. 930(F). Petitioner alleges the reason for his failure to raise this claim was that he was not aware of this claim until after trial; however, the basis for Petitioner's statements listed in his supporting facts are all founded on the trial transcript and evidence made a part of the trial. This claim is therefore, procedurally DENIED because of Petitioner's inexcusable failure to raise this issue.

(R. 1153-54). The Louisiana Second Circuit found no error in the trial court's ruling, (R. 1170), and the Louisiana Supreme Court denied the subsequent writ without reasons. *State of Louisiana ex rel. Chadwick Wright*, 62 So.3d at 72. Thus, the trial court's ruling was the last reasoned

---

[3] La. Code Crim.P. art. 930.4 reads in its entirety:

Art. 930.4. Repetitive applications

A. Unless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence shall not be considered.

B. If the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court may deny relief.

C. If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief.

D. A successive application may be dismissed if it fails to raise a new or different claim.

E. A successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application.

F. If the court considers dismissing an application for failure of the petitioner to raise the claim in the proceedings leading to conviction, failure to urge the claim on appeal, or failure to include the claim in a prior application, the court shall order the petitioner to state reasons for his failure. If the court finds that the failure was excusable, it shall consider the merits of the claim.

9

decision on the issue.

Thereafter, in a December 6, 2010 ruling, the state trial court denied Petitioner's second PCR application, solely containing *habeas* claim three, as procedurally defaulted under La. C. Cr. P. 930.4(D). (R. 1178-79). The state court compared Petitioner's two PCR applications and found:

> [I]n the present Application for Post Conviction Relief, the Petitioner raises these same facts, but solely in the context of an ineffective assistance of counsel claim . . . . Petitioner properly used the Uniform Application, which requires an Applicant to explain why he may have failed to raise a particular ground in earlier proceedings. Petitioner states that the reason he failed to raise this prior to conviction, on appeal or in a prior application was because he was not aware of the claim and because claims of ineffective assistance of counsel are limited to collateral review and will not be considered on direct appeal. However, most of Petitioner's Application concerns Petitioner's reasons for concluding that the bullet presented was not the same bullet that was found, which was the same factual basis provided for the claims in his first Application for Post Conviction Relief. The Court finds that Petitioner's Application is repetitive, successive, and fails to raise a new or different claim. Therefore, Petitioner's Application is DISMISSED pursuant to La. C.Cr.P. art. 930.4(D).

*Id*. Again, both the Louisiana state appellate court and supreme court affirmed the trial court's decision. *See* (R. 1180); *State ex rel Chadwick Wright*, 88 So.3d 459 (La. 2012).

Therefore, it appears the state courts barred review of Petitioner's first and third *habeas* claims based on procedural default pursuant to La. C. Cr. P. art. 930.4. This Court must consider whether the bar prohibits consideration of the claim on federal *habeas corpus* review. For this state-imposed procedural bar to prevent review by this federal *habeas* court, the bar must be independent and adequate.

*Independent State Ground*

A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural

bar. *Amos*, 61 F.3d at 338. For the reasons outlined above, there is no question that the state trial courts relied exclusively on rules of Louisiana procedural default, independent of federal law, in reaching its decision. *See e.g., Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994).

*Adequate State Ground*

The question of the adequacy of a state procedural bar is itself a federal question. *Douglas v. Alabama*, 380 U.S. 415, 422 (1965). To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902 (citing *Amos*, 61 F.3d at 339). A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id.* This federal *habeas* Court must therefore evaluate the adequacy of the rules applied to bar Petitioner's claims.

In doing so, a federal *habeas* court does not sit, however, to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Rather, a federal *habeas* court's analysis focuses on due process considerations, and due process requires only that the court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985)); *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)).

In keeping with this rule, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996). A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable to the particular facts of

the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived." For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar. *Johnson v. Lensing*, Doc. No. 99-0005, 1999 U.S. Dist. LEXIS 12032, at *4 (E.D. La. July 28, 1999); *Poree v. Cain*, Doc. No. 97-1546, 1999 U.S. Dist. LEXIS 11481 (E.D. La. July 20, 1999).

As noted above, the basis for dismissal of these claims was the state procedural grounds found in La. Code Crim. P. arts. 930.4(B), (D), (F). According to the trial court, Petitioner utilized the Uniform Application for Post-Conviction Relief, the use of which is required by La. C. Cr.P. art. 926(D). (R. 1153, 1178). This form provides specific information to Petitioner regarding repetitive applications, including the possibility that his claims would be dismissed. Petitioner herein makes no showing that the rules are not strictly or regularly followed, or evenhandedly applied. Thus, the state court procedural rules are presumed "adequate." Indeed, review of published Louisiana jurisprudence establishes that the Louisiana courts regularly invoke these rules to preclude review of similar claims asserted in post-conviction proceedings. *See Hess v. Cain*, Doc. No. 02-2756, 2005 U.S. Dist. LEXIS 8042, at *3 (E.D.La April 29, 2005) ("Louisiana courts have determined that this opportunity-to-explain on the Uniform Application provides the district judge with the information needed to exercise her discretion on whether to procedurally default the application.") (internal citations omitted). Under the situation presented herein, arts. 930.4(B), (D), and (F) were adequate support for the state courts' conclusion that post-conviction review of his claims was procedurally barred.

Of course, petitioner may be excused from the procedural bars if he can show cause for his failure to raise the claims properly and prejudice from the failure to review the claims.

*Cause and Prejudice*

To establish a cause for his procedural default, Petitioner must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Although it appears that Petitioner argues that trial counsel aided in the fabrication of trial evidence, he has not demonstrated, nor even attempted to demonstrate, the existence of any objective factor external to the defense that impeded his ability to raise these claims in a procedurally proper manner.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982)). Thus, because Petitioner has failed to show an objective cause for his default, the Court need not determine whether prejudice existed. *See Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

*Fundamental Miscarriage of Justice*

Petitioner's only remaining means of escaping the bar is to establish that a fundamental miscarriage of justice will occur if the merits of his claims are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish same, a petitioner must provide the court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436 (1986). "To satisfy the 'factual innocence' standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt." *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33.

Petitioner has not pointed to any evidence, new or existing, which would create a

13

reasonable doubt as to his guilt or which would establish his actual innocence of the crimes charged. The undersigned notes that Petitioner failed to assert a claim of insufficiency of the evidence in his *habeas* petition to this Court. Moreover, Petitioner confessed to his crime:

> In this statement, Defendant said it was a "big accident." Defendant admitted to the robbery and home invasion being planned, that he was armed with a .45 automatic, that everybody got shot when they were all fighting over the guns, that Ferguson fell out of the car and that they drove away. Defendant stated that he did not intend to kill Ferguson, but that Ferguson would not "stop the struggle." Defendant stated that the robbery was his idea, his plan and that he was the main shooter, but that the shooting was an accident.

*Wright*, 978 So. 2d at 1068. When the petitioner has not factually established his actual innocence, his procedural default can not be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Petitioner's first and third *habeas* claims are therefore procedurally barred from review by this Court, and should be **DENIED**. The Court will now turn to the merits of Petitioner's undefaulted ineffective assistance of counsel claim (claim two).

      B.      <u>Claim Two: Ineffective Assistance of Trial Counsel</u>

Petitioner argues that "trial counsel failed to investigate the circustances [*sic*] surrounding the prosecution – learn the evidence the prosecutor intends to use – then relate his investigation to [Petitioner] before deciding trial strategies." [doc. # 1, P. 8]. The main thrust of Petitioner's argument is that trial counsel failed to present evidence to corroborate Petitioner's testimony "that the victim . . . attempted to shoot [Petitioner] with [his] pistol." *Id.*

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254. *See Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012); *Amos v. Thronton*, 646 F.3d 199 (5th Cir. 2011); *Pape v. Thaler*, 645 F.3d 281 (5th Cir. 2011). Substandard advice of counsel rises to a

constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the petitioner of some other constitutional right. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Id.*

If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test also need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *See Strickland*, 466 U.S. at 689-90. The petitioner must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the petitioner must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also Mangum v. Hargett*, 67

F.3d 80, 84 (5th Cir. 1995). Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

The state trial court denied Petitioner's ineffective assistance of trial counsel claim on its merits, holding that "Petitioner fail[ed] to show in what way his counsel's investigation was defective or inadequate . . . Petitioner does not state in what way his counsel could have been more thorough in his investigation of the case." (R. 1155).

In light of the incomplete and conclusory nature of Petitioner's arguments, the undersigned cannot find that the state trial court's determinations were unreasonable . Petitioner failed to allege any specific facts, much less furnish any evidence, to either the state courts or this Court to establish precisely what additional exculpatory or mitigating evidence or what new defensive theories could have been developed had his trial counsel conducted further investigation into the areas at issue. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (holding that "without a specific, affirmative showing of precisely what the missing evidence or testimony would have been 'a habeas court cannot even begin to apply Strickland's standards' because 'it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance'"). Under such circumstances, Petitioner fails to satisfy the prejudice prong of *Strickland* with regard to his claim. Therefore, the state courts' rejection of Petitioner's claim was neither the product of an unreasonable application of clearly established Federal law nor the result of an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Petitioner's claim for relief on the basis of ineffective assistance of counsel

16

should be **DENIED.**

## CONCLUSION AND RECOMMENDATION

For the reasons stated above,

**IT IS RECOMMENDED** that the petition for *habeas corpus* filed by Petitioner Chadwick Wright [docs. # 1, 13] be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 25th day of June, 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE